# EXHIBIT A

**IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR LEE COUNTY, FLORIDA**
**SMALL CLAIMS DIVISION**

**WARREN DAVIS JR.,**

*Plaintiff*,

v.

**EQUIFAX INFORMATION SERVICES LLC,**

*Defendant*.

Case No: ____________________

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Warren Davis Jr.**, ("**Mr. Davis**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Services, LLC** ("**Equifax**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages not to exceed $8,000, exclusive of attorney's fees and costs, brought by Mr. Davis against Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and § 34.01, Florida Statutes.

3. Equifax is subject to the jurisdiction of the Court pursuant to § 48.193, Florida Statutes.

4. Venue is proper in Lee County, Florida, pursuant to § 47.051, Florida Statutes, because the acts complained of were committed and / or caused by the Defendant within Lee County.

## PARTIES

5. Mr. Davis is a natural person residing in Lee County, Florida.

6. Mr. Davis is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7. Equifax is a Georgia corporation, with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

8. Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

9. Equifax is a nationwide *Consumer Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet. As a CRA, Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### Mr. Davis's May 2026 Consumer Disclosure

10. On or about May 4, 2026, Mr. Davis requested and obtained a copy of his consumer credit disclosure from Equifax.

11. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Mr. Davis's request, Equifax was required to "clearly and accurately" disclose all information in Mr. Davis's file at the time of his request, with the limited exception that his Social Security number could be truncated upon request.

**Equifax's Disclosure Was Not Complete, Clear, or Accurate**

**Missing Original Creditors**

12. Despite a requirement to disclose all information in his credit file at the time of his request, Equifax's Disclosure omitted significant amounts of information contained in Mr. Davis's credit file.

13. Equifax's Disclosure indicated that Mr. Davis's file contained accounts classified as "Credit Accounts" and one account classified as "Collections." **SEE PLAINTIFF'S EXHIBIT A.**

14. Equifax's Disclosure states "Credit Accounts": "includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit." *Id.*

15. One of the tradelines appearing in the "Credit Accounts" section reported to Equifax is not a "credit account" whatsoever and is actually a collection account reported by Midlad Credit Management ("MCM").

16. MCM is a debt collector as well as a *Debt Buyer*, whose business consists almost exclusively of the purchase and collection of charged-off debts which were originally owed to third parties.

17. MCM does not lend to consumers or in any way provide financing or credit to consumers, and they are *never an Original Creditor*.

18. Despite this, when disclosing the MCM tradeline to Mr. Davis, Equifax indicated that MCM was the original creditor of the account, omitting any reference to the true original creditors.

19. Equifax is required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), and there is no mention of the names of the original creditors who had extended credit to Mr. Davis and who, after charge-off, assigned the balance to MCM.

20. Equifax thus shifted the burden of disclosure and inquiry away from itself, and onto Mr. Davis.

**Missing Account Numbers**

21. Making matters even more confusing for Mr. Davis, Equifax omitted all but the last four digits of the account numbers relating to the "Credit Accounts" and the "Collection" accounts.

22. MCM, along with Equifax's other furnishers of data, reported full account numbers to Equifax, and this information was not contained within Equifax's file regarding Mr. Davis's at the time of his request.

23. When Equifax produces and sells reports regarding Mr. Davis to third parties, the full account numbers and names of the original creditors are included in its reports.

24. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

25. Having a duty to disclose ***all of the information*** regarding the accounts in Mr. Davis's file, Equifax breached its duty by failing to provide the account numbers and original creditors' names, as such information is necessary for a consumer to be able to research and evaluate the information contained in his credit file.

26. Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

27. Equifax's disclosure contains a section titled "Collections," stating: "A collection account may be reported to one, two, or all three[1] of the nationwide credit reporting agencies (Equifax, Experian and TransUnion) and reflected on your credit reports. It can also have a negative impact on credit scores, depending on the credit scoring model (different ways credit scores are calculated)."

28. MCM is registered with the Florida Office of Financial Regulation as a Consumer Collection Agency.

29. Thus, Equifax should have placed this tradeline under the "Collections" header of Mr. Davis's Disclosure, rather than the "Credit Accounts" header.

30. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

31. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether

[1] Many collection agencies who furnish data to Equifax also report to Experian, TransUnion and Innovis, for a total of four, not three.

the plaintiff actually hoped to reside in the defendant's housing complex; therefore “the Art. III requirement of injury in fact [was] satisfied.

32. The lack of accurate, full account numbers caused Mr. Davis great frustration and emotional distress when trying to understand his credit report and verify it against his own records.

33. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), “it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not ‘clear’) disclosure of ‘all information’ in the file.” **SEE PLAINTIFF’S EXHIBIT B.**

34. Equifax’s omission of the original creditor and full account numbers greatly decreases a consumer’s ability to understand his consumer credit disclosure, identify the accounts, and compare those accounts with his own records.

35. The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association (“**CDIA**”), a trade association representing the CRAs, including Equifax, states that:

> “**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports**. Without the original creditor names, consumers may not know what the accounts represent.” (**Emphasis original**.)

**SEE PLAINTIFF’S EXHIBIT C.**

36. The *Credit Reporting Resource Guide* instructs debt collectors to “(r)eport the name of the company/creditor that originally opened the account for the consumer.” *Id.*

37. On information and belief, MCM complied with the *Credit Reporting Resource Guide* and reported the names of the true original creditor of its reported account.

**<u>Prevalence of Equifax's Errors</u>**

38. On information and belief, Equifax's Disclosure to Mr. Davis was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

39. On information and belief, this same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

40. On information and belief, www.annualcreditreport.com is the location where most consumers obtain their Equifax credit disclosure.

41. Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number and missing original creditor name errors.

42. Thus, *every* consumer with accounts appearing in the incorrect section of their disclosure who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Mr. Davis.

43. Equifax's error has therefore likely affected hundreds of thousands of consumers.

44. Equifax has known of the flaws in its systems for years, which has affected a large number of consumers. *See*, *e.g.*, *Justin Purdy vs. Equifax Information Services LLC,* case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

45. Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

46. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

47. Mr. Davis has a right to a full and complete disclosure of the contents of his file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

48. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Mr. Davis deprived him of this right.

49. Mr. Davis has hired the undersigned law firm to represent him in this matter and has assigned them his right to obtain reimbursement for his reasonable fees and costs.

## COUNT I
## EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA

50. Mr. Davis adopts and incorporates paragraphs 1 - 49 as if fully stated herein.

51. Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Mr. Davis's request for his consumer disclosure by failing to clearly and accurately disclose to Mr. Davis, a *Consumer*, all of the information in his file at the time of the request. Specifically, Equifax disclosed an account reported by MCM without disclosing the full account number or the name of the *Original Creditor*, as well as additional accounts which lacked the full account numbers, even though full account numbers were reported by the data furnishers.

52. Equifax knowingly provided inaccurate information in Mr. Davis's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

53. Equifax is therefore liable to Mr. Davis, pursuant to 15 U.S.C. § 1681n, for the greater of his actual damages and statutory damages of up to $1,000 per violation, plus attorneys' fees and costs.

**WHEREFORE,** Mr. Davis respectfully requests that the Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of **$1,000.00** per incident and Mr. Davis's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

**COUNT II**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA**

54. Mr. Davis adopts and incorporates paragraphs 1 - 49 as if fully stated herein.

55. Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Mr. Davis's request for his consumer disclosure by failing to clearly and accurately disclose to Mr. Davis, a *Consumer*, all of the information in his file at the time of the request. Specifically, Equifax disclosed an account reported by MCM without disclosing the full account number or the name of the *Original Creditor*, as well as additional accounts which lacked the full account numbers, even though full account numbers were reported by the data furnishers.

56. Equifax has a legal duty to provide consumers with a clear and accurate disclosure of all information within its file at the time of the consumer's request.

57. Equifax breached this duty when Equifax disclosed an account reported by MCM without disclosing the full account number or the name of the *Original Creditor*, as well as additional accounts which it disclosed without full account numbers, even though full account numbers were reported by the data furnishers.

58. Equifax is therefore liable to Mr. Davis, pursuant to 15 U.S.C. § 1681o, for Mr. Davis's actual damages, plus attorneys' fees and costs.

**WHEREFORE**, Mr. Davis respectfully requests that the Honorable Court enter judgment against Equifax for:

a. Mr. Davis's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Mr. Davis demands a jury trial on all issues so triable.

Respectfully submitted on May 4, 2026, by:

**SERAPH LEGAL, P. A.**

*/s/ Fethullah Gulen*
Fethullah Gulen, Esq.
Florida Bar No.: 1045392
FGulen@SeraphLegal.com
3505 E. Frontage Rd., Ste. 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**

A. Mr. Davis's Equifax Consumer Disclosure, May 4, 2026 – Excerpts.
B. FTC Opinion Letter.
C. *Credit Reporting Resource Guide*, Original Creditor Name Excerpt.

# EXHIBIT A

## Mr. Davis's Equifax Consumer Disclosure, February 19, 2026 – Excerpts

Prepared for:
**WARREN DAVIS JUNIOR**

EQUIFAX

Date: May 04, 2026
Confirmation # [redacted]

## Credit Accounts

This includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit.

### MIDLAND CREDIT MANAGEMENT - Closed

320 E BIG BEAVER RD STE 300, STE 300, TROY, MI 48083-1271 | (877) 822-0381
Account Number: *[redacted] | Owner: **Individual Account**
Loan/Account Type: **Debt Buyer Account** | Status: -

Date Reported: **05/01/2026** | Balance: $[redacted]
Credit Limit: - | High Credit: $[redacted]

Date Opened: **10/29/2024**
Date of Last Activity: -
Scheduled Payment Amount: -
Actual Payment Amount: -
Date of Last Payment: **12/30/**[redacted]
Term Duration: -

Date of 1st Delinquency: [redacted]/[redacted]/[redacted]
Date Major Delinquency 1st Reported: [redacted]/[redacted]/[redacted]
Amount Past Due: $[redacted]
Charge Off Amount: -
Date Closed: -
Activity Designator: -

Terms Frequency: -
Months Reviewed: [redacted]
Deferred Payment Start Date: -
Balloon Payment Amount: -
Balloon Payment Date: -
Narrative Code(s): [redacted]

#### Payment History

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2026 | [redacted] | | | | | | | | | | | |
| 2025 | | | | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ✓ | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | - | No Data Available |

#### 24 Month History

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 04/26 | [redacted] | | | | | | | |
| 03/26 | | | | | | | | |
| 02/26 | | | | | | | | |
| 01/26 | | | | | | | | |
| 12/25 | | | | | | | | |
| 11/25 | | | | | | | | |
| 10/25 | | | | | | | | |
| 09/25 | | | | | | | | |
| 08/25 | | | | | | | | |
| 07/25 | | | | | | | | |
| 06/25 | | | | | | | | |
| 05/25 | | | | | | | | |

Narrative Cod[redacted]
[redacted]

**EXHIBIT B**
**FTC Opinion Letter**

FEDERAL TRADE COMMISSION
PROTECTING AMERICA'S CONSUMERS

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

# EXHIBIT C

## *Credit Reporting Resource Guide*, Original Creditor Name Excerpt

## Field Definitions

### K1 Segment
### Original Creditor Name

The K1 Segment must be present each time the account is reported by collection agencies, debt buyers, check guarantee companies, student loan guaranty agencies, and the U.S. Department of Education. **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent.

Some state laws and CDIA policy stipulate that the original client/creditor must be identified. Federal law stipulates that the name of the payee must be identified when reporting returned checks.

Only one occurrence of the K1 Segment can be appended to the Base Segment. If not applicable, do not report the K1 Segment.

| FIELD | FIELD NAME & DESCRIPTION | 366 and 426 FORMATS | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 1 | **Segment Identifier**<br>Contains a constant of **K1**. | 2 | 1-2 | AN |
| 2 | **Original Creditor Name**<br>The content of this field is dependent on the type of reporter.<br><br>Collection Agencies: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been turned over to multiple collection agencies.<br><br>Debt Buyers: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been sold multiple times to different debt buyers. Refer to the K2 Segment for "purchased from" information.<br><br>Companies Reporting Returned Checks: Report the name of the payee; i.e., name of company to which the check was written. Refer to Frequently Asked Question 16 for additional guidelines on reporting returned checks.<br><br>Student Loan Guarantors/U.S. Department of Education: Report the name of the original student loan lender.<br><br>One of the following three options should be used when reporting a creditor's name that would reveal sensitive information about the consumer.<br><br>1. Report the name of the institution, but do not include reference to the type of service. For example, use the hospital name without identifying that it was the psychiatric unit that provided care. If a hospital's name reveals sensitive information, abbreviate the name.<br><br>2. Use the corporate name if it is different from the commercial name of a mental institution or drug rehabilitation center.<br><br>3. Do not report the account if either of the above two options would not sufficiently protect the consumer's privacy.<br><br>**Note: Encoded information is not acceptable in this field.** | 30 | 3-32 | AN |


*Copyright 2011 © Consumer Data Industry Association*